2026 IL App (4th) 250903

NO. 4-25-0903

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 4, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Hancock County |
| STEVEN D. HASKINS, | ) | No. 22CF31 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rodney G. Clark, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Justices Cavanagh and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Steven D. Haskins, appeals from the judgment of the Hancock County

circuit court, summarily dismissing his petition for relief under the Post-Conviction Hearing Act

(Act) (725 ILCS 5/122-1 *et seq.* (West 2024)). On appeal, defendant argues the trial court

erroneously dismissed his petition at the first stage of proceedings because he stated the gist of two

constitutional claims: (1) his stipulated bench trial was tantamount to a guilty plea where the court

failed to admonish him pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) and

(2) his trial and appellate counsel were ineffective when they failed to challenge the illegal stop

and search leading to his arrest and conviction. The State responds the court properly dismissed

defendant's petition at the first stage of proceedings because he failed to state the gist of a claim

that his constitutional rights were violated. We affirm.

I. BACKGROUND

¶ 3        In March 2022, the State charged defendant by information with unlawful possession with intent to deliver methamphetamine, a Class X felony (720 ILCS 646/55(a)(2)(C) (West 2022)) (count I), and unlawful possession of methamphetamine, a Class 1 felony (*id.* § 60(b)(3)) (count II).

¶ 4                    A. Motion to Suppress Evidence

¶ 5        In April 2023, defendant filed a motion to suppress evidence. In the motion, defendant alleged as follows. On the date of his arrest, defendant drove to a Rhodes gas station. Upon exiting, he was approached by State Trooper Jarred Hester. During this encounter, Trooper Hester requested consent to search defendant's vehicle. Defendant consented to the search. During the search of the vehicle, Trooper Hester recovered a clear plastic bag with approximately 34.31 grams of methamphetamine. Defendant argued that Trooper Hester violated his fourth amendment rights (see U.S. Const., amend. IV) because he lacked reasonable suspicion to perform an investigatory stop. Furthermore, even assuming the initial encounter was consensual, defendant was not free to leave, and his consent to the search was involuntary. Defendant requested all evidence resulting from his encounter with Trooper Hester be excluded in this case.

¶ 6        In June 2023, the trial court conducted a hearing on defendant's motion to suppress evidence. Defendant called Trooper Hester to testify. Trooper Hester testified he was employed by the Illinois State Police as a trooper in the patrol division. On March 18, 2022, he was performing a routine patrol of Hancock County, at around 3:47 p.m., when he recognized defendant driving a blue SUV traveling westbound and eventually turning into the Rhodes gas station in Plymouth, Illinois. Trooper Hester drove over to the gas station to make contact with defendant because it is "part of [his] job to maintain community relations and make contact with

subjects in the community." Trooper Hester could not recall whether he had previous contact with defendant but knew "who he was and was aware of his past dealings." Specifically, he knew defendant to have an "extensive criminal history" and had local intelligence that defendant was involved with "methamphetamine trade and use." During his encounter with defendant, Trooper Hester was wearing his officer's uniform, along with his standard equipment, including a gun in his holster, a baton, and pepper spray. During this encounter, he and defendant "talked about [defendant's] location; what he's been up to; if he's staying out of trouble; general conversation." Trooper Hester asked defendant for consent to search his vehicle, which defendant provided. Trooper Hester claimed defendant was free to leave at any time. During his search, Trooper Hester recovered a clear glass pipe, a plastic bag containing 34 grams of a white substance, a scale, and small individual plastic bags. The court allowed the admission of defendant's exhibit No. 1, which was video footage from Trooper Hester's squad car, depicting his encounter with defendant.

¶ 7        Defendant also called his wife, Carrie Haskins, to testify. Carrie testified she and defendant were presently married but not together. Carrie originally met Trooper Hester because their daughters were friends. Carrie testified that sometime in early 2022, before defendant was arrested, Trooper Hester pulled her over in her driveway. After writing her a written warning for a traffic violation, Trooper Hester asked Carrie about defendant. Specifically, Trooper Hester asked Carrie whether defendant was "running again"—*i.e.*, distributing methamphetamine. Carrie testified she told Trooper Hester she did not know, and Trooper Hester told her that he was going to "get" defendant. Carrie later called defendant to let him know what Trooper Hester said.

¶ 8        Defendant testified on his own behalf. On March 18, 2022, he was on his way to pick up the dog he shares with Carrie when he recognized Trooper Hester's vehicle parked at a school. Defendant had never met Trooper Hester but knew what car he drove from a previous

conversation with Carrie. Defendant entered the Rhodes gas station in Plymouth when he noticed Trooper Hester standing outside. Defendant testified he commented to the cashier, " '[O]ne of the local law enforcement must be going to mess with me today.' " When Trooper Hester approached him, defendant did not feel like he was free to leave because Trooper Hester was blocking him from going to his vehicle. Although defendant told Trooper Hester he could search his vehicle, he did not feel like he could say no.

¶ 9       The trial court found defendant had made a *prima facie* showing, and the burden shifted to the State. The State called Trooper Hester to testify. Trooper Hester testified when he pulled into the gas station, he did not block defendant's vehicle. Additionally, he did not activate the lights on his patrol vehicle and was not investigating any alleged traffic violation. Trooper Hester did not remove any of his weapons during his encounter with defendant and did not physically touch him in any way. Although Trooper Hester asked defendant questions about methamphetamine in the community, Trooper Hester asserted he was not investigating defendant at the time. Trooper Hester described his demeanor as "cordial" and reiterated he did not block defendant's path to his vehicle.

¶ 10       Following arguments, the trial court took the matter under advisement. In June 2023, the court entered a written order denying defendant's motion to suppress evidence. Specifically, the court found the encounter between defendant and Trooper Hester was consensual, meaning defendant was free to leave at any time and could have declined to consent to the search his vehicle. Furthermore, "once the methamphetamine was found, the dynamics of the encounter changed and there was probable cause for the arrest."

¶ 11       In July 2023, defendant filed a motion to reconsider the denial of his motion to suppress evidence. Following an August 2023 hearing, the trial court denied the motion.

¶ 12                          B. Stipulated Bench Trial

¶ 13        In February 2024, the trial court conducted defendant's stipulated bench trial. At

the outset of the proceedings, the assistant state's attorney explained as follows:

> "For the record, we would be proceeding on a stipulated bench trial. The
>
> Defendant had some issues that he wanted to be able to preserve for appeal. The
>
> parties were in agreement that [Rule] 402(a) admonishments were not required
>
> because this is not [tantamount] to a guilty plea. The Defendant had previously
>
> waived his right to a jury trial November 9th of '23, and the State will be dismissing
>
> Count I as part of the agreement to proceed to a stipulated bench trial."

Thereafter, the State provided the court with a written copy of the list of stipulations signed by the

parties, which included the following:

> "If called to testify, Jarred Hester would testify that on March 18, 2022, at
>
> approximately 3:47 p.m. he was employed with the Illinois State Police as a
>
> Trooper. At that time, he was conducting stationary patrol in Plymouth, Hancock
>
> County, Illinois. Further, at that time, he witnessed [defendant] (M/W 08/26/1964),
>
> later identified by his valid Illinois driver's license, driving a blue Chevrolet SUV
>
> with Illinois registration D82466 into Rhodes Gas Station in Plymouth, Illinois.
>
> Trooper Hester activated his audio and video recording and conducted a consensual
>
> encounter in the Rhodes Gas Station parking lot at Main Street and Church Street
>
> in Plymouth, Illinois.
>
> Jarred Hester would testify that as he approached the gas station, he
>
> witnessed [defendant] exit the blue Chevrolet SUV and enter the gas station. No
>
> other persons exited the blue Chevrolet SUV, and he could see no other occupants

in the vehicle. Trooper Hester exited his vehicle and engaged in a conversation with [defendant] when he exited the gas station. No other people made entry into or exited from the blue Chevrolet SUV in this time.

Jarred Hester would testify that during the encounter he requested and was granted consent to search [defendant's] vehicle. [Defendant] is the only registered owner of the blue Chevrolet SUV. During the search of the blue Chevrolet SUV, Trooper Hester found a black Oakley Sunglass container in the driver's side center console map pocket. Inside the case, Trooper Hester found a clear, glass pipe with white powdery residue that later field tested positive for methamphetamine. Inside the same case, Trooper Hester found a clear plastic bag with a white crystal-like substance that later field tested positive for methamphetamine.

[Defendant] admitted ownership of the items. [Defendant] was arrested and placed in handcuffs which were checked for fit and double locked. [Defendant] was issued *Miranda* Warnings [(see *Miranda v. Arizona*, 384 U.S. 436 (1966))].

A further search of the blue Chevrolet SUV yielded a black pouch under the driver's seat of the vehicle. In the pouch, Trooper Hester located approximately 50 clear plastic bags that were approximately 2" X 3". In the same pouch, Trooper Hester also located a black electronic scale with white crystal-like residue on the scale that later field tested positive for methamphetamine. In the same pouch, Trooper Hester also found a clear plastic bag containing a white crystal-like substance that later field tested positive for methamphetamine and weighed more than 30 grams. [Defendant] was transported to Hancock County Jail where he was turned over to jail staff for processing.

Jarred Hester would testify that [defendant] was subsequently interviewed and admitted that the white crystal-like substance that field tested positive for methamphetamine and weighed more than 30 grams was his and had been purchased in Peoria, Illinois.

Jarred Hester would testify that, while at the Hancock County Jail, he gave all of the evidence he had collected, including the clear plastic bag containing approximately 34.31 grams of white crystal-like substance to Illinois State Police Sergeant Cory Fox for the evidence to be logged.

Jarred Hester would testify that he recorded his encounter with the defendant and that the recording is a fair and accurate depiction of their conversation as it occurred and that it has not been altered in any way. Said recording would be identified in open court as Exhibit 1. The defendant stipulates that the foundation for Exhibit 1 is established and has no objection to its admission. The defendant stipulates to the admission of Exhibit 1.

Jarred Hester would identify the plastic bag containing a white crystal-like substance that weighed more than 30 grams, which would be identified in open court as Exhibit 2, and testify that said plastic bag containing the white crystal-like substance is in a substantially similar condition from when he last saw it."

The parties further stipulated Sergeant Fox, Trooper Dallas Gray, Illinois State Police (ISP) forensic evidence technician Scott Mathewson, and ISP forensic scientist Jennifer MacRitchie would testify regarding the chain of custody of exhibit No. 2. Additionally, the parties stipulated to the admission of MacRitchie's laboratory report, which was marked as exhibit No. 3.

¶ 14    The State rested on the stipulations, and defendant did not present any evidence.

The State argued the stipulations and admitted exhibits were sufficient to establish defendant's guilt on count II beyond a reasonable doubt. Defendant's counsel waived argument. The trial court found defendant guilty on count II and set the matter for sentencing. Pursuant to the agreement, count I was dismissed. Following an April 2024 hearing, the court sentenced defendant *in absentia* to 12 years in prison.

¶ 15        On direct appeal, defendant argued defense counsel was ineffective for failing to file a certificate, pursuant to Illinois Supreme Court Rule 404 (eff. Sept. 1, 2023), allowing him to have his court assessments waived. This court agreed and remanded for filing of the certificate. *People v. Haskins*, No. 4-24-0923 (2025) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16        In August 2025, defendant *pro se* filed a petition for postconviction relief under the Act. In the petition, defendant alleged his trial and appellate counsel denied him the effective assistance of counsel, as required by the constitution. Specifically, defendant claimed trial counsel failed to set a hearing to determine whether his failure to appear at his sentencing hearing was beyond his control, and appellate counsel failed to raise this issue on direct appeal. Defendant further claimed, "It is clear after reading the Record, Petitioner did have issues that he wanted to preserve for appeal. (See States Attorney Alexander C. Whitman statement stanza 8-11 (stipulated bench trial) held 5th day of February 2024). However, none of these issues were presented to the Court by counsel." Those issues included the following: (1) failing to secure information on drug court proceedings, (2) failing to inform defendant of any plea offered by the State, (3) "[f]ailing to ensure that the Petitioner understood the proceedings that were occurring and what rights he was waiving by agreeing to a stipulated bench trial," (4) knowingly filing a motion to reconsider the denial of the motion to suppress evidence despite not meeting the requirements to support such a

motion, and (5) failing "to challenge and preserve any post-trial appeal rights by ensuring that petitioner was consulted, brought forward any issues Petitioner was wanting to preserve on post-trial motions such as his pre-sentencing investigation report and his well-known history with substance abuse."

¶ 17　　　　　On August 13, 2025, the trial court entered a written order dismissing defendant's petition at the first stage of proceedings, concluding defendant's claims were frivolous and patently without merit. The court explained as follows:

> "The record is clear that the court admonished the Defendant on February 5, 2024, that if he would not be present, the sentencing hearing would proceed in his absence and that he could be sentenced without being present. The Defendant acknowledged the admonishment on the record. The Defendant was given a copy of the order that set out the day and time for the contested sentencing."

¶ 18　　　　　This appeal followed.

¶ 19　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　　On appeal, defendant argues the trial court erroneously dismissed his petition at the first stage of proceedings because he stated the gist of two constitutional claims. First, his stipulated bench trial was tantamount to a guilty plea where the court failed to admonish him pursuant to Rule 402(a). Second, his trial and appellate counsel were ineffective when they failed to challenge the illegal stop and search leading to his arrest and conviction. The State responds that the court properly dismissed defendant's petition at the first stage of proceedings because he failed to state the gist of a constitutional violation. We affirm.

¶ 21　　　　　　　　　　A. Postconviction Proceedings

¶ 22　　　　　The Act (725 ILCS 5/122-1 to 122-9) (West 2024)) permits a criminal defendant to

collaterally attack his conviction where it resulted from a violation of his constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8. Proceedings under the Act are divided into three stages. *Id.* ¶ 9. At the first stage, the defendant initiates the proceedings by filing a petition in the trial court. 725 ILCS 5/122-1 (West 2024). The defendant must attach affidavits or other evidence in support of the petition or explain why the same are not attached. *Id.* § 122-2. Although the defendant need only include a "limited amount of detail," he is not "excused from providing any factual detail at all surrounding the alleged constitutional deprivation." (Internal quotation marks omitted.) *People v. Delton*, 227 Ill. 2d 247, 254 (2008); see 725 ILCS 5/122-2 (West 2024).

¶ 23        Within 90 days of filing, the trial court may summarily dismiss the petition if it concludes it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2024). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact. *Tate*, 2012 IL 112214, ¶ 9. Meritless legal theories include ones "completely contradicted by the record," while fanciful factual allegations may be "fantastic or delusional." *People v. Hodges*, 234 Ill. 2d 1, 16-17 (2009). The court must construe the petition liberally and take all well-pleaded facts as true. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). This is considered a "low" threshold, and the defendant need only state the "gist" of a constitutional claim at this stage of proceedings. *Hodges*, 234 Ill. 2d at 9 (2009).

¶ 24        If the petition is not dismissed at the first stage of proceedings, the trial court advances the petition to the second stage, wherein counsel may be appointed to represent the defendant and the State may file a motion to dismiss the petition or file an answer. See 725 ILCS 122-2.1(b), 122-4, 122-5 (West 2024). If the court finds defendant has made a "substantial showing" of a constitutional violation, it will advance the petition to a third-stage evidentiary hearing. *Tate*, 2012 IL 112214, ¶ 10. This court reviews the dismissal of a postconviction petition

at the first stage of proceedings *de novo*. *Id.*

¶ 25                                  B. Stipulated Bench Trial

¶ 26        On appeal, defendant first argues the trial court erred when it denied his petition at the first stage of proceedings because he stated the gist of a claim his stipulated bench trial was tantamount to a guilty plea where the court failed to admonish him pursuant to Rule 402(a). The State contends this issue is not properly before the court because defendant's petition "contained no claim that the court was required to give him any admonitions." The State further argues defendant's stipulated bench trial was not tantamount to a guilty plea. We conclude this issue is properly before the court, but defendant's stipulated bench trial was not tantamount to a guilty plea. Accordingly, defendant failed to state the gist of a claim that his constitutional rights were violated.

¶ 27                                      1. *Rule 402(a)*

¶ 28        Rule 402(a) states, in pertinent part, as follows:

"In hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict, there must be substantial compliance with the following:

(a) Admonitions to Defendant. The court shall not accept a plea of guilty or a stipulation that the evidence is sufficient to convict without first, by addressing the defendant personally in open court, informing him or her of and determining that he or she understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected

- 11 -

because of prior convictions or consecutive sentences;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and

(4) that if he or she pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her; or that by stipulating the evidence is sufficient to convict, he or she waives the right to a trial by jury and the right to be confronted with any witnesses against him or her who have not testified." Ill. S. Ct. R. 402(a) (eff. July 1, 2012).

¶ 29        In *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009), the Third District explained Rule 402 as follows:

"The purpose of Rule 402 admonishments is to ensure that a defendant understands his plea, the rights he has waived by pleading guilty and the consequences of his action. [Citation.] It is well settled that Rule 402 requires substantial, not literal, compliance with its provisions. [Citation.] 'Substantial compliance' means that although the trial court did not recite to the defendant, and ask [the] defendant if he understood, all the components of Rule 402(a), the record nevertheless affirmatively and specifically shows that the defendant understood them. [Citation.] Illinois courts have found substantial compliance with Rule 402 where the record indicates that the defendant understandingly and voluntarily entered his plea, even if the trial court failed to admonish [the] defendant as to a specific provision."

¶ 30        We must first address the State's assertion that defendant's Rule 402 claim is not

properly before this court because he failed to raise it in his petition before the trial court. The State is correct that claims not raised in a defendant's *pro se* postconviction petition cannot be raised for the first time on appeal. See *People v. Jones*, 213 Ill. 2d 498, 508-09 (2004) ("We *** hold that defendant may not raise the issue of the improper admonishments for the first time on appeal. The proper forum for the claim is a successive postconviction action."). However, under this court's liberal construction, we conclude defendant's petition contains factual allegations sufficient to invoke a Rule 402(a) claim on appeal. Specifically, defendant alleged in his petition that he did not "underst[an]d the proceedings that were occurring and what rights he was waiving by agreeing to a stipulated bench trial." As noted above, the trial court is required to admonish a criminal defendant pursuant to Rule 402 "in any case in which the defense offers to stipulate that the evidence is sufficient to convict." Ill. S. Ct. R. 402 (eff. July 1, 2012). Moreover, the entire purpose of Rule 402 is to ensure the defendant understands the rights he has waived by pleading guilty or stipulating to his guilt. See *Dougherty*, 394 Ill. App. 3d at 138. Because a stipulated bench trial can trigger the requirement to admonish a criminal defendant pursuant to Rule 402(a) under those circumstances, defendant's *pro se* claim that he did not understand the rights he was waiving by agreeing to a stipulated bench trial is sufficient to bring his Rule 402 claim properly before this court on appeal. Accordingly, we will consider defendant's claim on the merits.

¶ 31          2. *Claim Stipulated Bench Trial Was Tantamount to a Guilty Plea*

¶ 32          Before we address whether defendant stated the gist of a claim the trial court failed to admonish him pursuant to Rule 402(a), we must first determine whether the rule applied in this case. Here, defendant did not enter a traditional plea of guilty but instead was convicted after a stipulated bench trial.

¶ 33          In *People v. Taylor*, 2018 IL App (2d) 150995, ¶ 21 (Jorgensen, J., specially

- 13 -

concurring), Justice Jorgensen aptly explained the stipulated bench trial as follows:

> "Traditionally, the concept of a stipulated bench trial arose to allow a defendant to preserve his right to appeal an adverse ruling on a pretrial motion without participating in a trial in the conventional sense. This was especially true where the only defense to the charge was the suppression of certain evidence and the defendant wished to appeal the denial of a motion to suppress. The right to appeal that denial would, of course, be waived if the defendant pleaded guilty, and a stipulated bench trial, therefore, would act to 'preserve' a right to appeal that would otherwise be lost."

Stated differently, a stipulated bench trial allows a defendant to preserve issues for appeal, while, in contrast, a guilty plea waives all nonjurisdictional defenses or defects. *People v. Horton*, 143 Ill. 2d 11, 22 (1991). Accordingly, "[a] stipulated bench trial is a legal fiction created solely to give defendants the benefit and convenience of a guilty plea while avoiding the consequences of waiver or forfeiture." (Internal quotation marks omitted.) *People v. Gonzalez*, 2025 IL App (4th) 240384, ¶ 34.

¶ 34     Defendant asserts the trial court was required to substantially comply with Rule 402(a) because his stipulated bench trial was tantamount to a guilty plea. Specifically, defendant argues the entire case was presented by stipulation and he did not present or preserve a defense. The State responds the court was not required to comply with Rule 402(a) because defendant did not stipulate to his guilt and preserved a defense by litigating his motion to suppress evidence. We conclude defendant's stipulated bench trial was not tantamount to a guilty plea and the court was not required to admonish him under Rule 402(a).

¶ 35     As noted above, the trial court must substantially comply with Rule 402(a) "[i]n

hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict." Ill. S. Ct. R 402 (eff. July 1, 2012). Accordingly, "[w]here a stipulated bench trial is tantamount to a guilty plea, the trial court must admonish the defendant" pursuant to Rule 402(a). *People v. Campbell*, 2015 IL App (3d) 130614, ¶ 15. "A stipulated bench trial is tantamount to a guilty plea when the entirety of the State's case is presented by stipulation and the defendant does not present or preserve a defense, or when the stipulation includes a statement that the evidence is sufficient to convict." *Id.* This court reviews the issue of whether a stipulation amounts to a guilty plea *de novo*. *People v. Mitchell*, 353 Ill. App. 3d 838, 844 (2004).

¶ 36       In support of his argument that his stipulated bench trial was tantamount to a guilty plea, defendant contrasts his circumstances with those presented in *People v. Galarza*, 2023 IL 127678. In that case, the defendant was charged with two counts of driving under the influence of alcohol (625 ILCS 5/11-501(a)(1) (West 2016)), one count of failure to reduce speed to avoid an accident (*id.* § 11-601(a)), and one count of operating an uninsured motor vehicle (*id.* § 3-707). *Galarza*, 2023 IL 127678, ¶ 4. At the defendant's stipulated bench trial, his counsel denied one of the key stipulated facts, *i.e.*, that the defendant was the driver of the vehicle. *Id.* ¶¶ 12, 49. Specifically, defense counsel argued the evidence supported a finding that the other person involved in the accident was seen in the driver's seat and could have been the driver at the time of the accident. *Id.* ¶¶ 12, 51. On appeal, the defendant argued, *inter alia*, his stipulated bench trial was tantamount to a guilty plea and the trial court erred when it failed to admonish him pursuant Rule 402(a). *Id.* ¶ 1. The supreme court held that the defendant's stipulated bench trial was not tantamount to a guilty plea and, therefore, the trial court was not required to provide Rule 402(a) admonishments. *Id.* ¶¶ 51-52. Specifically, the court concluded the defendant "did more than deny stipulated facts"; he presented a defense by way of challenging the sufficiency of the evidence. *Id.*

¶ 51. Moreover, although "the stipulated evidence showed [the] defendant admitted *** that 'he was the driver,' [the] defendant's defense to the contrary presented a genuine question of fact for the trial court to decide." *Id.*

¶ 37    Defendant asserts *Galarza* is distinguishable from his case and that it dictates the opposite result because, in contrast to trial counsel in that case, his trial counsel did not (1) challenge the sufficiency of the evidence, (2) present a defense, or (3) deny a key stipulated fact. Instead, defendant's argument continues, "there was no question for the court to decide," and "the court received only the State's version of the facts and no challenge whatsoever." Moreover, despite the assistant state's attorney's contention that no Rule 402 admonishments were required because defendant wanted to preserve certain issues for appeal, trial counsel did not preserve any defense because he failed to file a posttrial motion.

¶ 38    Here, we agree with defendant that the facts in *Galarza* are distinguishable in this case but disagree that a different result is required. First, defendant is correct that his trial counsel did not present a defense, challenge the sufficiency of the evidence, or deny a key stipulated fact at his stipulated bench trial. However, we disagree that "there was no question for the court to decide." Defendant never conceded that the stipulated facts were sufficient to convict him; the trial court was still required to determine whether the stipulated facts were sufficient to satisfy each element of the offense. See *Taylor*, 2018 IL App (2d) 150995, ¶ 9 ("It does not matter that, as [the] defendant maintains, [the stipulated] facts were indeed sufficient; what matters is that [the] defendant left the question of sufficiency for the court to decide."); see also *People v. Foote*, 389 Ill. App. 3d 888, 894 (2009) (concluding the defendant's stipulated bench trial was not tantamount to a guilty plea where, *inter alia*, defendant agreed that trial court would decide guilt).

¶ 39    Moreover, we disagree with defendant's contention that his counsel's failure to file

a timely posttrial motion challenging the suppression issue rendered his stipulated bench trial tantamount to a guilty plea. The issue of whether a defendant presented or preserved a defense is determined by examining the stipulated bench trial itself and not defense counsel's actions *after* trial. As the State correctly acknowledges in its brief, "The absence of a post-trial motion says nothing about the nature of the proceedings, namely, whether it was a stipulated bench trial or a guilty plea." The record in this case shows that the entire purpose of proceeding to the stipulated bench trial was to prepare a path forward for defendant to challenge the suppression issue on appeal. While the State's comments at the beginning of the stipulated bench trial are not dispositive—meaning the State cannot simply declare that Rule 402 admonishments are unnecessary and have it be so—they are evidence of the parties' intentions in proceeding to a stipulated bench trial in this case. Additionally, defendant affirmatively claimed in his *pro se* postconviction petition that "he did have issues that he wanted to preserve for appeal." As stated above, "[a] stipulated bench trial is a legal fiction created *solely* to give defendants the benefit and convenience of a guilty plea while avoiding the consequences of waiver or forfeiture." (Internal quotation marks omitted and emphasis added.) *Gonzalez*, 2025 IL App (4th) 240384, ¶ 34. Defendant had already litigated the suppression motion and subsequent motion to reconsider. By the conclusion of the stipulated bench trial, defendant retained the opportunity to challenge that decision on appeal. The only remaining step would have been to raise the issue in a timely posttrial motion. See 725 ILCS 5/116-1(b)-(c) (West 2024) (motions for new trial); *People v. Todd*, 249 Ill. App. 3d 835, 839-40 (1993) ("[A] written post-trial motion is mandatory to preserve issues for appeal after a bench trial as well as a jury trial."). The mere fact defense counsel declined to follow up on the suppression issue by filing a posttrial motion did not fundamentally transform the nature of the proceedings from a stipulated bench trial to a guilty plea.

¶ 40 We conclude the trial court was not required to admonish defendant pursuant to Rule 402(a) and his stipulated bench trial was not tantamount to a guilty plea because defendant never stipulated to his guilt and retained the opportunity to preserve the suppression issue for appeal. Consequently, defendant's petition failed to state the gist of a constitutional claim.

¶ 41 In reaching this conclusion, we would be remiss not to acknowledge the increasing frequency of cases before this court involving the issue of whether a criminal defendant's stipulated bench trial was tantamount to a guilty plea. When properly conducted, a stipulated bench trial is "a valuable tool to conserve court resources by allowing undisputed testimony to be presented by written stipulation, issues and defenses to be made of record, the case to be efficiently resolved, and the matter to be forthwith presented for review." *Taylor*, 2018 IL App (2d) 150995, ¶ 22 (Jorgensen, J., specially concurring). We encourage the parties and the trial court, when conducting a stipulated bench trial, to clearly set forth the nature and purpose of the proceedings at the outset. Specifically, it would be prudent for the court and the parties to identify the claims or defenses the defendant is preserving, determine whether the sufficiency of the evidence is for the court to decide, and state whether Rule 402(a) applies. Creating such a record may prevent future confusion regarding the necessity of compliance with Rule 402(a).

¶ 42       C. Ineffective Assistance of Counsel

¶ 43 We next address defendant's argument his *pro se* postconviction petition stated the gist of a claim his trial and appellate counsels were ineffective when they failed to challenge the trial court's denial of his motion to suppress evidence in a timely posttrial motion and on direct appeal, respectively. The State responds defendant's claim is both (1) forfeited where counsel on direct appeal could have challenged trial counsel's ineffectiveness but did not and (2) not properly before this court where defendant did not raise the issue in his *pro se* postconviction petition before

the trial court. We agree with the State.

¶ 44    "To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Hodges*, 234 Ill. 2d at 17 (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). Accordingly, "[a]t the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* Additionally, claims of ineffective assistance of appellate counsel are subject to the same *Strickland* analysis. *People v. Easley*, 192 Ill. 2d 307, 328-29 (2000). "A defendant who contends that appellate counsel rendered ineffective assistance, *e.g.*, by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that the decision prejudiced the defendant." *Id.*

¶ 45    Here, we agree with the State that this issue is forfeited because appellate counsel could have challenged the issue of trial counsel's effectiveness on direct appeal but did not. It is well-settled that "[i]ssues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited." *People v. English*, 2013 IL 112890, ¶ 22. As stated *supra*, the trial court may summarily dismiss a defendant's *pro se* postconviction petition if it concludes it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2024). A petition is meritless where the claims therein are barred by the doctrines of *res judicata* and forfeiture. See *People v. Blair*, 215 Ill. 2d 427, 445 (2005) ("Determinations of *res judicata* and forfeiture are inherently legal determinations which may bar relief under the Act. Thus, an otherwise meritorious claim has no basis in law if *res judicata* or

forfeiture bar the claim.").

¶ 46    Moreover, we further agree with the State that defendant's claim cannot be considered under the theory that appellate counsel was ineffective for not challenging the effectiveness of trial counsel because this issue is not properly before this court. As stated above, claims not raised in a defendant's *pro se* postconviction petition cannot be raised for the first time on appeal. *Jones*, 213 Ill. 2d at 508. Although defendant claims in his petition that he was denied the effective assistance of trial and appellate counsel, he does not do so on the grounds they respectively failed to properly challenge the denial of the motion to suppress. The only time defendant references the motion to suppress evidence in the petition was to argue his trial counsel erroneously filed a motion to reconsider the trial court's denial of the motion to suppress evidence. Instead, defendant claimed his trial and appellate counsel were ineffective for (1) failing to secure information on drug court proceedings; (2) failing to inform defendant of any plea offered by the State; (3) "[f]ailing to ensure that the Petitioner understood the proceedings that were occurring and what rights he was waiving by agreeing to a stipulated bench trial"; (4) failing to "to challenge and preserve any post-trial appeal rights by ensuring that petitioner was consulted, brought forward any issues Petitioner was wanting to preserve on post-trial motions such as his pre-sentencing investigation report and his well-known history with substance abuse"; and (5) failing to set a hearing to determine whether his failure to appear at his sentencing hearing was beyond his control. Here, defendant's *pro se* postconviction petition makes no claim whatsoever that trial and appellate counsel were ineffective for failing to challenge the trial court's denial of his motion to suppress evidence. Accordingly, we conclude this issue is not properly before this court, and the trial court properly dismissed the petition at the first stage of proceedings.

¶ 47                                  III. CONCLUSION

- 20 -

¶ 48      For the reasons stated, we affirm the trial court's judgment.

¶ 49      Affirmed.

*People v. Haskins*, **2026 IL App (4th) 250903**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Hancock County, No. 22-CF-31; the Hon. Rodney G. Clark, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Adrienne E. Sloan, and Jonathan Yeasting, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Bobi James, State's Attorney, of Carthage (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |